HENRY G. BENTON AND ANOTHER v. B. H. BOWLER AND OTHERS.[1]

June 26, 1931.

No. 28,476.

[1]Reported in 237 N. W. 424.

*Grimes & Toensing,* for appellants.
*Homer Morris,* for respondents.

HILTON, J.

Plaintiffs appeal from an order denying their motion for a new trial. At the close of plaintiffs' case the court directed the jury to return a verdict for the defendants. There were no assignments of error as to the admission or rejection of evidence; the assigned error was that the verdict was not justified by the evidence and was contrary to law.

This action was brought to recover damages in the sum of $1,300 alleged to have been sustained because of expenses incurred, disbursements made, and time consumed by plaintiffs in certain legal proceedings (hereinafter referred to) arising out of a real estate transaction. It was claimed that the proceedings were made necessary because of an alleged conspiracy to cheat, swindle, and defraud plaintiffs.

Plaintiffs are husband and wife and were the owners of an encumbered 160 acres of land in Todd county, Minnesota. On May 20, 1924, plaintiffs as parties of the second part and defendant Annie Brown Morris and her then husband, Calvin W. Morris, as parties of the first part, entered into a written contract (in triplicate) by the terms of which the first parties agreed to convey to the second parties by warranty deed a certain encumbered duplex property in Minneapolis for the sum of $16,368 in consideration of $6,400 in cash and the assumption by the second parties of various mortgages on the property, the balance of the purchase price to be paid at a stated amount per month.

As a part of the same transaction the second parties were to convey by warranty deed to the first parties the farm in question, the equity therein being taken as the $6,400 cash payment provided for in the contract for a deed on the duplex property. The

second parties to the contract on May 22, 1924, executed a warranty deed to the first parties therein for the Todd county land. That deed was placed in escrow with defendant Bowler, who also had one of the copies of the contract.

The arrangement was that the second parties were to have the title to the duplex examined, and after the same was approved by their attorney the transaction was to be consummated. That attorney did not approve the title to the duplex property; Bowler in a written opinion also called attention to certain encumbrances and possible liens of a minor nature which could easily be disposed of. Bowler later gave Mr. Morris the deed to the farm. The latter sent it to the register of deeds of Todd county for recording, but because of unpaid taxes it was not recorded. The deed was later returned to Morris and by him placed in Bowler's possession.

The title to the duplex property was in one Ernest G. Nelson. On May 22, 1924, the latter executed and delivered to Mr. Morris a warranty deed to the duplex property, which was recorded on May 29. On May 28, 1924, the Morrises by warranty deed conveyed the duplex property to one Ehle, subject to the encumbrances thereon. This deed was recorded on October 23, 1924. A mortgage on the farm for $5,800 was given by the Morrises and by defendants Fahrenbachs to Nelson. It was recorded. That such a mortgage was to be given was the understanding between Nelson and Morris at the time the duplex was deeded to Morris. Plaintiffs never secured possession of the duplex. Bowler, upon demand made, refused to return to plaintiffs the deed of the Todd county land, claiming that they were not entitled to it. The deed was produced by him and delivered to the court at the trial of the Todd county cancelation case next referred to.

The Bentons prevailed in an action brought against the Morrises (commenced in Todd county and later tried in Hennepin county) to cancel the Todd county deed and the contract for a deed. Fraud and deceit were alleged in the complaint in that action, but neither was specially found in the findings of fact therein. Just what interest the Fahrenbachs had, if any, in the transaction does not

appear. However the court found in the cancelation action that the name of Mrs. Morris, originally appearing in the deed, had been erased therefrom and the name of Mrs. Fahrenbach substituted therefor, but that there was no evidence showing that Bowler did either; nor does it appear that any of the present defendants did. In any event plaintiffs were not prejudiced or injured thereby. The expenses, disbursements, etc. the subject of the present action, grew out of that litigation.

Plaintiffs paid Nelson $300 for a satisfaction of the mortgage given to him. That sum, with $500 as attorney's fees, $500 for value of time spent by plaintiffs in the litigation, and $22.10 costs and disbursements taxed and entered as a judgment in the cancelation suit, made up the amount here sued for. Mr. Morris died before the trial of the Todd county action, and his wife, appointed as administratrix of his estate, was made a party thereto. The judgment for $22.10 released Mrs. Morris and her deceased husband's estate from any liability on the cause of action sued upon in the instant case. Stickney v. Goward, 161 Minn. 457, 201 N. W. 630, 39 A. L. R. 1216; Smith v. Chaffee, 181 Minn. 322, 232 N. W. 515.

The court in the present case in directing a verdict for defendants stated:

"There is no evidence in this case to sustain the charge of a conspiracy up to the time that the deed of the Todd county land and the contract for the sale of the Minneapolis lot were placed in the hands of Mr. Bowler. The transaction was a bona fide, perfectly legal transaction on the part of Morris and Benton. There was no intention on the part of Morris or anyone connected with it to defraud the other. They were placed in escrow in Mr. Bowler's hands for a certain purpose. If there is any cause of action on account of what occurred subsequent to that, it is for a violation or a breach of that trust or escrow agreement on the part of Mr. Bowler and the Morrises, and the action is one for damages for breach of that agreement."

Benton himself testified that up to the time the deed was left in escrow with Bowler there was no fraud or conspiracy as far as he knew. He only claimed that when Bowler retained the deed and did not deliver it to him on demand there was then a conspiracy to cheat him. The evidence did not establish any conspiracy.

From a careful examination of the record we are convinced that the conclusion reached by the trial court was correct.

Affirmed.

STONE, J.

I concur in the result.

